IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Amber Pieloor, on behalf of herself, and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | **MEMORANDUM OPINION AND INITIAL SCHEDULING ORDER** |
| vs. | ) ) | |
| Gate City Bank, | ) ) | |
| Defendant. | ) ) | Case No.  1:12-cv-039 |

## I.     BACKGROUND

Plaintiff alleges in the complaint that she was a customer of defendant Gate City Bank (herein "Gate City" or "Bank") within the three years preceding the filing of the complaint. According to the complaint, Gate City is a regional bank with approximately 32 branch locations in North Dakota and Minnesota and is headquartered in Bismarck.  (Doc. No. 1, ¶¶ 4-5).

Plaintiff alleges that Gate City unfairly and deceptively "re-sequenced" transactions in her account for the purpose of maximizing the amount of overdraft fees it could charge and that this conduct constituted a breach of contract, unjust enrichment, and a violation of North Dakota's Unlawful Sales and Advertising Act, codified at N.D.C.C. ch. 51-15.  Plaintiff sues on her own behalf.  She also seeks to sue on behalf of all Gate City's customers who were similarly situated. (Doc. No. 1, ¶¶ 1-3).

This is not the first class action that has been brought against a financial institution for alleged re-sequencing of financial transactions.  In most (if not all) of the cases for which classes have been certified, the allegation is that defendant financial institution would accumulate

customers' debit card transactions throughout the day and then, at the end of the day, process the transactions from highest to lowest, *i.e.*, re-sequence the transactions from the order in which they actually occurred. See, e.g., In re Checking Account Overdraft Litigation, MDL No. 2036, 281 F.R.D. 667, 682 (S.D. Fla. 2012); Trombley v. National City Bank, 826 F. Supp. 2d 179, 182 (D.D.C. 2011); Schulte v. Fifth Third Bank, No. 09–cv–6655, 2010 WL 8816289, *1 (N.D. Ill. 2010); Gutierrez v. Wells Fargo Bank, N.A., 730 F. Supp. 2d 1080, 1083 (N.D. Cal. 2010).

This case, however, is broader in scope. While the complaint alleges the re-sequencing of debit card transactions similar to the cases cited above, it also alleges that Gate City re-sequenced other transactions in plaintiff's account, including checks and deposits. Consequently, unlike the cases where the certified classes have been limited to customers who have had their debit card transactions re-sequenced from highest to lowest, plaintiff in this case seeks certification of the following class:

> All GCB customers in the United States who maintained checking accounts with GCB and were assessed overdraft charges due to the improper re-sequencing of transactions.

(Doc. No. 1, ¶ 29).

What is not entirely clear from the complaint, however, is exactly what plaintiff is claiming constituted the allegedly unfair and deceptive re-sequencing for transactions other than debit card transactions. Taking what plaintiff has actually pled, it appears the following is what is being claimed:

- Gate City accumulated throughout the day all transactions - including debit card transactions, checks, and deposits - and then processed the transactions together at

the end of the day in a manner so that (1) the debits would be posted first and (2) the debits would be posted in the order from highest to lowest.

- Gated City re-sequenced transactions from different days as if they occurred on the same day.

(Doc. No. 1, ¶¶ 8-15, 22-28).[1]

In its answer, Gate City denies that it re-sequences transactions in the manner alleged. In addition, it details the manner in which it processes the various transactions that plaintiff complains about. Gate City states that it employs an "online, real-time system" that processes transactions throughout the day in the order they are received from third parties. With respect to paper checks, Gate City alleges that it processes image files of checks received from the Federal Reserve Bank and the Bank of North Dakota as they are received and, if more than one check is received at a time, the checks are processed in the order of the numbers on the check. For checks converted to "ACH" (Automated Clearing House transactions), Gate City alleges it processes these transactions when received and that, if more than one customer transaction is in a batch, it processes the transactions from low to high and not high to low as plaintiff claims. Gate City also alleges that ATM/POS transactions authenticated with a PIN, transactions processed over the Bank's teller line, and transactions initiated by the customer via the Bank's online banking site or automated phone system are processed immediately. Also, in the one instance in which plaintiff claims a deposit was improperly sequenced, Gate City explained its policy for processing that deposit as discussed in more detail below. (Doc. No. 6).

---

[1] If this is not what is being claimed, plaintiff may need to consider amending the complaint. At the end of the day, Gate City is required only to defend against what is actually alleged in the complaint.

3

Plaintiff pleads in her complaint two examples of where she claims Gate City improperly re-sequenced her transactions. One example is the activity in her account on May 24, 2010. Plaintiff alleges that she had a positive balance in her account of $176.47 at the start of the day and that Gate City thereafter processed a series of ATM/POS withdrawals, checks, and one deposit, which were interspersed with five overdraft charges in the following sequence:

| Type of transaction | Debit | Credit | Account balance |
| --- | --- | --- | --- |
| | | | $176.47 |
| Not specified | $19.44 | | $157.03 |
| Not specified | $6.72 | | $150.31 |
| Not specified | $19.44 | | $130.87 |
| Deposit | | $34.76 | $165.63 |
| Not specified | $175.07 | | -$9.44 |
| Overdraft charge | $30.00 | | -$39.44 |
| ATM/POS | $11.75 | | -$51.19 |
| Overdraft charge | $30.00 | | -$81.19 |
| ATM/POS | $27.66 | | -$108.85 |
| Overdraft charge | $30.00 | | -$138.85 |
| Check | $94.00 | | -$232.85 |
| Overdraft charge | $30.00 | | -$262.85 |
| Check | $32.00 | | -$294.85 |
| Overdraft charge | $30.00 | | -$324.85 |

(Doc. No. 1, ¶ 26).[2]  Plaintiff claims that Gate City re-sequenced the transactions for May 24, 2010,

and that, if the transactions had not been re-sequenced, the $175.07 debit transaction would been

processed after the debit transactions that followed, *i.e.*, the two ATM/POS transactions of $11.75

and $27.66 and the two checks of $94.00 and $32.00, with the net result being there would only have

been one overdraft charge and not five charges.  (Doc No. 1, ¶ 27).

However, what is missing from this example are facts indicating when the individual

transactions occurred relative to each other and when Gate City received the transactions.

Consequently, it is not possible to conclude from what facts have been alleged that the $175.07 debit

transaction was re-sequenced relative to the others.  Moreover, if plaintiff's allegations are that Gate

City batched all of the debits and credits for that day and processed the debits  from high to low first,

then the fact the $175.07 transaction was not posted before all the debits allegedly processed on that

day, the fact that other debit transactions were not posted in strict high to low order, and the fact the

credit was interspersed with the debits seem to contradict plaintiff's more general allegations.[3]

In response, Gate City alleges in its answer that May 24, 2010, was a Monday.  It further

states that the debits of $19.44, $6.72, $19.44, $175.07, $11.75, and $27.66 were all debit card

transactions that were made on Friday, May 21 or Saturday, May 22 and that all were posted to

plaintiff's account in the order that they were received.  Gate City also states that the $94 and $32

debits were checks numbered 1051 and 1052, that the checks were received by Gate City on May

---

[2]  The table set forth above is a modified version of the one contained in the complaint.  In the above table, the type of transaction for each debit or credit has been listed to the extent that information was provided in the complaint. As discussed in more detail below with respect to Gate City's response, Gate City claims that the transactions identified above as "not specified" were all ATM/POS transactions.

[3]  Plaintiff does not allege that Gate City was required to hold all transactions until the end of the day and then "re-sequence" the transactions in a manner that minimized the amount of overdraft fees that could be charged.  Rather, the "re-sequencing" that plaintiff complains about was not processing the transactions in the order they occurred. (Doc. No. 1, ¶¶ 12-13).

24, 2010, through the check clearing system, and that the checks were posted to plaintiff's account at 3:08 p.m. in the ascending order of the check numbers. Based on these facts, Gate City states there was no re-sequencing. (Doc. No. 6, ¶ 27).

The other example of alleged re-sequencing claimed by plaintiff are the transactions allegedly posted to her account on May 22, 2009, which she states were processed as follows after she began the day with a negative $295.02 account balance:

| Type of transaction | Debit | Credit | Account balance |
|---|---|---|---|
|  |  |  | -$295.02 |
| ATM/POS | -$14.99 |  | -$310.01 |
| NSF Item | -$30 |  | -$340.01 |
| Deposit |  | $400 | $59.99 |

(Doc. No. 1, ¶ 24). Plaintiff alleges she would not have received the overdraft of charge of $30 for the $14.99 ATM/POS withdrawal if her $400 deposit had not been re-sequenced and posted after the withdrawal. (Doc. No. 1, ¶ 25). However, this example too suffers from a lack of facts required to conclude that re-sequencing necessarily took place. What is missing from plaintiff's allegations are facts indicating more precisely the timing of the transactions relative to each other if the contention is that the referenced transactions should have been processed in the order that they actually occurred. And, if that is not plaintiff's contention, then the problem is the lack of clarity in terms of what is being claimed was wrong with how the deposit was processed with respect to other account transactions, particularly since there is no allegation in the complaint that Gate City on any particular day was obligated to batch all transactions and then process deposits first.

In response, Gate City states that the facts alleged by plaintiff with respect to the May 22, 2009, are inaccurate and incomplete. Gate City alleges plaintiff made the $14.99 debit card

transaction on May 21, 2009, the day prior, and that Gate City received and posted the transaction at 4:24 a.m. on May 22, 2009. Gate City states the $400 deposit was an electronic ACH transaction with a settlement date of May 22, 2009, and that ACH rules require that credits or deposits received by 5:00 p.m. the business day prior to the settlement date be available by 9:00 a.m. on the settlement date. Gate City alleges that plaintiff's credit was available prior to the time required but after Gate City received the debit card transaction. (Doc. No. 6, ¶ 24).

But, what Gate City means by this is not entirely clear. One inference from what Gate City states is that the deposit was made on May 21, and if that is the case, Gate City does not explain why it was not posted earlier on May 22 (say at 12:01 a.m., for example) and ahead of the ATM/POS debit. On the other hand, if plaintiff's claim is that the referenced transactions should have been posted in the order they actually occurred, which appears to be her contention, neither party has pled facts indicating when the deposit was made relative to the ATM/POS withdrawal.[4]

This matter is now before the court for issuance of a Rule 26 scheduling order. The parties were unable to mutually agree upon a plan, so they each submitted their own.

Plaintiff's plan permits immediate and broad-ranging discovery with respect to both class and merits issues leading up to a motion for class certification. In contrast, Gate City's plan proposes expedited discovery that, initially, would be limited to the question of whether it re-sequenced plaintiff's transactions in the manner claimed in the complaint to be followed by time for the filing of a dispositive motion with respect to the merits of plaintiff's claims.

---

[4] To put a finer point on the ambiguity, assume the $14.99 ATM/POS transaction was a debit card transaction that took place the day prior as Gate City claims and that it took place at 6:00 p.m. Further assume the $400 deposit was also made the day prior but took place at 9:00 p.m. If plaintiff's contention is that the proper sequencing of the transactions should have been in the order that they occurred, then whether the $400 deposit was posted at 12:01 a.m. on May 22 or at 7:00 a.m., and after when Gate City claimed the ATM/POS transaction was posted at 4:24 a.m., would be irrelevant.

The court discussed the competing plans with the parties during a telephonic scheduling conference. When a consensus could not be reached as to how to proceed, the court requested briefs along with any information that the parties might have about similar cases.

## II.    DISCUSSION

Gate City argues there is no reason for the parties to incur the expense of full-blown class and merits discovery, as well as wrestle with the difficult discovery problems created by customer-account confidentiality and the fact that much of the records are electronic, before the question of whether it actually re-sequenced plaintiff's transactions in the manner claimed is addressed. According to Gate City, plaintiff will be unable to prove that it re-sequenced transactions, and if that is the case, not only will her claims fail so will the class action.

In response, plaintiff makes a number of arguments why Gate City's plan should be rejected and her plan adopted. She argues there is no need for the preliminary inquiry suggested by Gate City because she has pled a prima facie case. Also, she notes that a number of courts have certified classes in suits for re-sequencing, that regulatory authorities are conducting industry-wide inquiries into this practice, and that her attorneys have been contacted by a number of persons complaining about Gate City's overdraft charges - the implicit suggestion here being that Gate City must have likewise engaged in re-sequencing.

Plaintiff also contends that bifurcating discovery and allowing for a preliminary inquiry into the re-sequencing questions will: (1) unduly delay the litigation; (2) result in having to unnecessarily repeat certain discovery; (3) unfairly give Gate City "multiple bites at the apple" with respect to the merits; and (4) defeat the purpose of a class action by requiring that she proceed alone on the merits. She argues that discovery with respect to transactions involving putative class members is necessary

8

in order to make the required showing of commonality between her claims and those of the putative

class. Finally, she argues that allowing simultaneous class and merits discovery is the norm for class

action cases and points to the scheduling order approved by Magistrate Judge Klein in Sauby v. City

of Fargo, Civ. No. 3:07-cv-10, which permitted simultaneous discovery on class and merits issues,

as a proven model for what works well for class actions in this district.

After careful consideration of the proposed plans, the arguments of counsel, and the other

material that has been submitted, the court concludes that what is appropriate for this case is: (1)

a preliminary inquiry into whether class proponent(s) can make a sufficient showing that Gate City

engaged in re-sequencing of transactions for any of the named plaintiffs in the manner and for the

types of transactions alleged in the complaint; and (2) initial discovery that is limited to these issues.

The court reaches this conclusion for the following reasons:

First, the facts pled by plaintiff in her complaint, even if assumed to be true, are insufficient

to demonstrate that the alleged re-sequencing occurred, even on a prima facie basis.[5]  In fact, if

plaintiff crossed the threshold for stating a plausible claim, she barely did so.  Cf. Bell Atlantic Corp.

v. Twombly, 550 U.S. 544 (2007).  This, together with Gate City's detailed explanation of how it

processes the subject transactions and its point-by-point response to plaintiff's examples of alleged

re-sequencing, raise serious questions regarding whether Gate City re-sequenced plaintiff's

transactions in the manner claimed.  And, if plaintiff, along with any persons who may be added as

named plaintiffs, are unable to make a sufficient showing that their transactions were re-sequenced

in the manner claimed, no class could be certified, see, e.g., Great Rivers Co-op. of Southeastern

Iowa v. Farmland Industries, Inc., 120 F.3d 893, 899 (8th Cir. 1997) ("Inherent in Rule 23 is the

---

[5]  As discussed earlier, there is insufficient information to reach that conclusion as well as eliminate equally, if not more plausible, explanations for why the referenced transactions were processed in the order indicated.

requirement that the class representatives be members of the class.") and the savings from the avoided costs of immediate, full-blown class and merits discovery would likely be substantial.

The court is aware that classes have been certified in a number of re-sequencing cases and that there have been class settlements in some of the cases. See, e.g., In re Checking Account Overdraft Litigation, supra; Trombley v. National City Bank, supra; Schulte v. Fifth Third Bank, supra; Gutierrez v. Wells Fargo Bank, N.A., supra. However, in reviewing these cases, it appears they were limited to the allegation that defendants were batching and re-sequencing debit card transactions from highest to lowest and it was not seriously disputed that defendants had engaged in that practice. See id. In fact, it appears defendants in some of the cases argued the re-sequencing from high to low actually benefitted customers.

Here, it is certainly plausible that Gate City may have chosen to process its customer-account transactions differently from defendants in the above cases. In fact, it might be one way for smaller, regional financial institutions like Gate City to compete, *i.e.*, not to engage in practices that tend to irate customers. In any event, plaintiff's contention that Gate City must have been re-sequencing its transactions to maximize overdraft charges because others were doing it is mere speculation. Cf. Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 774 (1st Cir. 2011).

Second, even if a sufficient showing can be made after discovery that Gate City engaged in re-sequencing some of the types of transactions in the manner alleged in the complaint, there appears to be a significant possibility that a sufficient showing cannot be made for all of the different types of transactions alleged.[6] And, if that is the case, the scope of this action, including any class to be

---

[6] There may be good reasons why the other class action cases cited by plaintiff all appear to be specifically limited to the re-sequencing of debit card transactions from high to low.

certified, will necessarily be narrower and making this determination sooner rather than later will likely save substantial discovery and other litigation expense.

Third, whether a sufficient showing can be made that Gate City re-sequenced transactions in the ways claimed in the complaint for one or more of the named plaintiffs is something that likely can be determined after allowing discovery tailored to that issue and without the need for immediate, full-blown discovery with respect to all potential class and merits issues.

Fourth, if upon preliminary inquiry it is determined that Gate City engaged in some re-sequencing, a significant part of the hard work will have been done with respect to class certification, since it is likely the same types of transactions will have been handled in the same manner for other customers given the nature of the subject matter. In fact, at that point, the parties may be able to agree upon the definition and scope of any class that the court might consider, even if there is continued disagreement about whether one should be certified. In short, the court is not convinced that proceeding in the manner set forth below will greatly add to the overall length and cost of the litigation - particularly since the issues raised by Gate City will have to be determined at some point.

Unlike Gate City's proposal, however, the court's plan will not limit the discovery to the account transactions of Ms. Pieloor, who, currently, is the only named plaintiff. An examination of some additional accounts may be necessary, if for no other reason than to help explain or confirm the manner of sequencing of transactions in Ms. Pieloor's account. Also, plaintiff's attorneys have indicated that they are considering adding additional named plaintiffs.

That being said, it appears likely that a determination of whether Gate City re-sequenced transactions in the ways claimed in the complaint for the named plaintiffs can be made from

consideration of a limited number of accounts, given the likelihood that Gate City processes transactions for its customers in a uniform manner. In fact, a substantial amount of the relevant evidence likely lies outside the individual customer accounts, *e.g.*, the systems employed by Gate City to process transactions and the practices of third-parties in presenting transactions to Gate City.

The court will not decide now many accounts should be considered. For the present, the court will proceed as follows: Plaintiff's attorneys have represented to the court that they have received numerous complaints about Gate City's overdraft practices and that they are in the process of examining the accounts of some of these individuals. The court will allow time for additional persons to join as party plaintiffs so that their account transactions can be considered. In addition, if some of the persons in contact with plaintiff's counsel do not want to be added as named plaintiffs, the court will allow consideration of their account transactions if they provide Gate City with a release allowing their account information to be used in the litigation subject to any reasonable confidentiality agreement that may be demanded. The court assumes this will generate a reasonable number of accounts for consideration. But, if not, plaintiff can seek relief from the court in the manner outlined later.

Finally, before turning to the schedule that the court will order, some discussion of the court's authority to proceed in this manner is warranted in light of plaintiff's argument that it is contrary to the usual sequence of proceeding in class action cases generally and Fed. R. Civ. P. 23 in particular. According to plaintiff, Rule 23 contemplates a decision on class certification prior to any consideration of the merits of her allegations of re-sequencing and this, in turn, requires she be allowed to proceed immediately with full-blown class discovery.

There are two problems with plaintiff's argument. First, it is predicated upon the faulty

assumption that there is a "one-size-fits-all" manner of proceeding in class actions mandated by

Rule 23.[7] Second, it ignores the case law that permits a preliminary inquiry into issues touching

upon the merits of a class proponent's claim when required to properly address the prerequisites for

class certification, even if those issues have to be addressed again later by the jury. These points

will be addressed in turn.

While implicit in Rule 23's requirements is a preference for a decision on class certification

prior to a consideration of the merits of a class proponent's claim, this "order of battle" is not

mandated for all cases. See, e.g., Wright v. Schock, 742 F.2d 541 (9th Cir. 1984); see generally 7A

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785.3

(3d ed.) (database updated Sept. 2012) (hereinafter "Federal Practice and Procedure"). The Rule

requires in subsection (c)(1)(A) only that the decision be made "at an early practicable time" and

there is nothing stating it must be made before any consideration of the merits. See id.

In fact, Rule 23's history and the Advisory Committee Notes make clear that consideration

of the merits in advance of class certification is permissible in appropriate cases. At one time, Rule

23 required that the class certification decision be made "as soon as practicable." However, this

language was replaced in 2003 with the current "at an early practicable time" in order to make clear

that courts have more flexibility than what was suggested by the earlier language. Advisory

Committee Notes, 2003 Amendments, subd. (c), para (1). In explaining the change, the Advisory

Committee Notes state that the earlier language did not reflect "the many valid reasons that may

---

[7] Plaintiff's reference to Judge Klein's scheduling order in Sauby is somewhat curious given that the parties and the court all agreed there would be no discovery in that case (class or merits) until the overriding liability issue in the case was certified to the North Dakota Supreme Court for resolution. If anything, Sauby is an instance where early consideration of the merits made sense before substantial sums were invested in full-blown class and merits discovery.

justify deferring the initial certification decision." Id. And, particularly relevant to this case, the

Committee Notes give as an example those situations in which a defendant "may prefer to win

dismissal or summary judgment as to the individual plaintiffs without certification and without

binding the class that might have been certified." Id. In fact, the initial language in Rule 23

specifying the timing of the decision on class certification was incorporated primarily to ensure that

putative class members would be bound by any merits determination, which is for the protection of

defendants. American Pipe & Construction Co. v. Utah, 414 U.S. 538, 545-49 (1974); Peritz v.

Liberty Loan Corp., 523 F.2d 349, 353-54 (7th Cir. 1975); Richard Marcus, Reviving Judicial

Gatekeeping of Aggregation: Scrutinizing the Merits on Class Certification, 79 Geo. Wash. L. Rev.

324, 332-33 (2011) (hereinafter "Marcus, Scrutinizing the Merits on Class Certification").[8]

Consistent with this history and interpretation of Rule 23, courts in appropriate cases have

dismissed a class proponent's claims on the merits when a defendant has sought that relief, rather

than deferring defendant's dispositive motion and requiring the parties to incur the litigation expense

associated with class certification. E.g., Curtin v. United Airlines, Inc., 275 F.3d 88, 93 (D.C. Cir.

2001); Wright v. Schock, 742 F.2d at 544-45; see Vervaecke v. Chiles, Heider & Co., Inc., 578 F.2d

713, 719-20 (8th Cir. 1978); see generally Federal Practice and Procedure at § 1785.3 & n. 35. In

addition, there are cases where courts have limited discovery prior to consideration of an early

dispositive motion or have expressed approval of that practice, particularly when the class

proponent's allegations are particularly questionable. See, e.g., Superior Offshore Int., Inc. v.

---

[8] That being said, class proponents also have an interest in the timing of the class certification decision because of the impact it might have on the time and costs of the litigation as well as litigation strategies. See, e.g., Bieneman v. City of Chicago, 838 F.2d 962, 964 (7th Cir. 1988); see generally 3 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, Newberg on Class Actions § 7.15 (4th ed.) (database updated September 2012). The prevailing view appears to be that the court must consider all of the interests and make a determination that makes sense for the particular case keeping in mind Rule 23's preference that, generally speaking, class certification be addressed first. See, e.g., Chavez v. Illinois State Police, 251 F.3d 612, 629-30 (7th Cir. 2001).

14

Bristow Group, Inc., No. 11-3010, 2012 W.L. 3055849, **2, 8 (3d Cir. Jul. 27, 2012) (unpublished opinion); Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d at 773-74;  Kautz v. Sugarman, Nos. 10-Civ-3478, 10-Civ-4312, 2011 WL 1330676, *10 (S.D.N.Y. Mar. 31, 2011).

The court agrees that an early dispositive motion may be appropriate in this case if the allegations by the named plaintiff(s) are not supported by the discovery permitted below and Gate City elects to file a motion - keeping in mind that any decision would not then be binding on the putative class.  However, this need not be decided now.  If a dispositive motion is made following the initial discovery, the court can determine at that time whether it should proceed to consider the motion or defer it pending class certification.

Secondly, in addition to the discretion that the court has under Rule 23 with respect to the timing of the class certification decision, the court is also entitled to look behind the pleadings and make a preliminary determination with respect to the merits of a class proponent's allegations when they are material to deciding whether the prerequisites for class certification have been satisfied. E.g.,  Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S.Ct. 2541 (2011) ("Wal-Mart"); In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation, 678 F.3d 409, 416-18 (6th Cir. 2012);  Behrend v. Comcast Corp., 655 F.3d 182, 190 (3d Cir. 2011); Blades v. Monsanto Co., 400 F.3d 562, 567 (8th Cir. 2005).  This point was recently reaffirmed by the Supreme Court in Wal-Mart where the Court made clear that certification of a class is proper only after a court has conducted a "rigorous analysis" of the prerequisites for a class action, even if the inquiry touches upon the merits.  Wal-Mart at 2551-52 & n.6.[9]  Further, the timing of the inquiry with respect to

_____

[9] As an example, the Court referenced class-action suits for securities fraud and the necessity in those cases of making a showing during the class-certification stage that the shares of the proposed class were traded in an efficient

particular class certification issues, as well as the amount of discovery that should be permitted in advance of the inquiry, is well within the discretion of the court. Fed. R. Civ. P. 16; <u>see</u>, <u>e.g.</u>, Marcus, <u>Scrutinizing the Merits on Class Certification</u> at 355-59; Federal Judicial Center, <u>Manual for Complex Litigation</u> §§ 21.11 - 21.14 (4th ed. 2004). There is no requirement that all issues relevant to determining whether a class should be certified must be resolved at the same time.

As observed earlier, before a class can be certified, there must be a named plaintiff who is a member of the putative class and who has standing. <u>Lunn v. Prudential Ins. Co. of America</u>, 283 Fed.Appx. 940, 943 (3d Cir. 2008) (unpublished); <u>Great Rivers Co-op. of Southeastern Iowa v. Farmland Industries, Inc.</u>, 120 F.3d at 899; <u>Vervaecke v. Chiles, Heider & Co., Inc.</u>, 578 F.2d at 719-20; <u>see</u> <u>Wal-Mart</u>, 131 S.Ct. at 2550; <u>see</u> generally <u>Federal Practice and Procedure</u> § 1761. In this case, since this is disputed by Gate City, the class proponents will have to demonstrate that one or more of the named plaintiffs had transactions in their accounts re-sequenced in the manner alleged in the complaint before a class can be certified. <u>See</u> <u>id.</u> In addition, some determination with respect to the re-sequencing questions will likely be necessary in defining the class, *i.e.*, whether it should be the one proposed by plaintiff or, possibly, a narrower class if there is not sufficient evidence of re-sequencing for all of the ways and for all of the types of transactions alleged in the complaint. <u>See</u> <u>Wal-Mart</u>, at 2550 ("Rule 23(a) ensures that the named plaintiffs are appropriate representatives

---

market in order to obtain the benefit of the "fraud on the market" presumption of reliance, even if that would have to be proved a second time at trial to the jury. <u>Wal-Mart</u>, at 2552 n.6. In concluding that consideration of issues touching upon the merits is permissible when required to rule on class certification, the Court expressly rejected any suggestion to the contrary by its decision in <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156 (1974). In <u>Eisen</u>, the Court concluded that an inquiry into the merits for the purpose of allocating the costs of the class notice between the parties was not appropriate and then went on to state: "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." <u>Id.</u> at 178. In <u>Wal-Mart</u>, the Court referenced this statement and then remarked: "To the extent the quoted statement goes beyond the permissibility of a merits inquiry for any other pretrial purpose, it is the purest dictum and is contradicted by our other cases." <u>Wal-Mart</u>, at 2552 n.6.

of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.") (quotations omitted).

At this point, consistent with the authority allowing the court to make a preliminary determination regarding issues material to class certification that touch upon the merits, the court's initial plan and schedule contemplates some time for limited discovery to be followed by a preliminary inquiry into whether class proponents can make a sufficient showing that Gate City engaged in the re-sequencing of transactions as alleged in the complaint for any of the named plaintiffs, such that this case should be allowed to proceed further toward class certification.[10] In addition, the court may also consider a dispositive motion on these issues if Gate City elects to file one.

While this is the plan, the only thing definitively being decided now is that the initial discovery will be limited to the re-sequencing issues. In other words, the court can always decide later to defer the preliminary inquiry into re-sequencing, as well as any dispositive motion that may be filed by Gate City, until a later point in the proceedings.

---

[10]   Other than stating that the evidence must be sufficient to withstand "rigorous analysis," the Supreme Court has not opined on whether any more precise standard for resolving disputed facts in this context is appropriate and, if so, what the standard should be. The circuit courts appear to be divided on the issue. See Gooch v. Life Investors Ins. Co. of America, 672 F.3d 402, 418 n.8 (6th Cir. 2012). For example, the Sixth Circuit has suggested that "rigorous analysis" is a sufficient standard absent further direction from the Supreme Court. Id. The Third Circuit, however, has taken the position that the appropriate standard is "preponderance of the evidence." E.g., In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d cir. 2008). Likewise, the Eighth Circuit has spoken of the need to "resolve" factual disputes as required in assessing whether Rule 23's requirements for class certification have been met, which seems to imply a preponderance standard. E.g., Blades v. Monsanto Co., 400 F.3d at 567.

**III.    CONCLUSION**

Based on the foregoing, it is hereby **ORDERED** as follows:

1.    Gate City shall by November 30, 2012, provide to plaintiff:   (1) copies of all documents in its possession that it will rely upon to demonstrate that it has not re-sequenced the specific transactions alleged by Ms. Pieloor in the complaint to have been re-sequenced (*i.e.*, the transactions related to the account activity on May 22, 2009, and May 24, 2010), and (2) the identity of the Gate City officials and other persons whose affidavit or deposition testimony will be relied upon to support Gate City's argument that the transactions specifically alleged in the complaint have not been re-sequenced as alleged.

2.    For purposes of the preliminary inquiry into re-sequencing contemplated by this order and the limited discovery to precede that inquiry, November 30, 2012, shall be the deadline for persons to file motions to join as additional party plaintiffs and have their account transactions considered as part of the preliminary inquiry into re-sequencing.  In addition, plaintiff shall have until November 30, 2012, to provide the names of Gate City customers who believe they have had their account transactions improperly sequenced, who voluntarily are willing to have their accounts examined for purposes of the initial inquiry into re-sequencing contemplated by this order, and who have provided releases to Gate City allowing their account information to be examined and disclosed for this purpose subject to any reasonable confidentiality agreement that may be demanded.  If Gate City believes the number of persons added as party plaintiffs or who voluntarily agree to have their accounts examined

18

is excessive and unnecessary for what is to be determined, it can seek relief from the court. In addition, if plaintiff concludes that proceeding in this fashion will not generate a sufficient number of customer accounts for consideration, plaintiff's counsel shall have until November 30, 2012, to consult with defendant's counsel to come up with a different plan for testing a limited number of accounts with respect to the alleged re-sequencing and to propose a mutually agreeable plan. Defendant's counsel shall likewise participate in good faith in such discussions. If, after good faith consultations a mutually agreeable plan cannot be agreed upon, plaintiff may submit her own plan by December 5, 2012, the court will then allow some time for Gate City to respond, and the court will issue a decision.

3.    The parties shall have until March 15, 2013, to conduct discovery limited to whether Gate City has re-sequenced account transactions in one or more of the ways alleged in the complaint with respect to the account of Ms. Pieloor and for the accounts of any additional persons who seek to be added as named plaintiffs or are otherwise identified to Gate City as provided for in the prior paragraph.

4.    The parties can discover information lying outside the individual customer accounts that is relevant to the preliminary inquiry of whether and to what extent Gate City re-sequences customer account transactions to maximize overdraft fees, *e.g.*, discovery into how Gate City's systems are set up to process transactions.

5.    The parties shall have until April 1, 2013, to file simultaneous briefs on the issue of whether there is sufficient evidence to establish whether Gate City re-sequenced account transactions in the ways and the manner alleged in the complaint for one or

more of the named plaintiffs, such that the court should proceed to further consider the class allegations, and if so, as to what issues.  Any replies shall be filed on or before April 30, 2013.  Also, if a hearing is requested, the parties shall make the request on or before April 30, 2013.

6.  All other discovery shall be stayed pending further order of the court. Once the court has had an opportunity to consider the re-sequencing issues, and either makes a determination or defers a determination to a future time, a new scheduling order will be issued.

7.  The court will issue a separate order scheduling a trial in 2014 in order to preserve a trial date on the court's calendar.   If there are known conflicts with this date, the parties should immediately contact undersigned for a different date.

8.  Nothing herein prohibits the filing of any pretrial motions that may be appropriate.

9.  The parties are free to agree upon an alternative plan for proceeding.  Also, since the dates set forth herein have not been discussed with the parties, either party may request a hearing on the details of what is being ordered.

Dated this 15th day of October, 2012.

> */s/  Charles S. Miller, Jr.*
> Charles S. Miller, Jr.
> United States Magistrate Judge